Okay, the next case before the court is Hansen v. DHS. This is the Department of Homeland Security, case number 172584. Mr. Cater, how do you pronounce that? Yes, thank you. You want five minutes for rebuttal? It's familiar. Okay. Okay, you may begin. Thank you, Your Honor. We raised two principal arguments in our briefs to this court. We addressed the obligation of the government to prove intent and its failure to do so, and we also raised the Fourth Amendment argument. If it pleases the court, I'd like to start with the Fourth Amendment argument, because I think it's a narrower argument, and in some respects it's a little simpler. This court has dealt with drug testing in a number of occasions. It's dealt with it in the context of reasonable suspicion in Wiley, recently in Holton, I believe it is, that dealt with post-accident testing, and most recently in Grimsrud, it had a case involving compliance testing. It's never had a case involving the question of whether an individual is in a testing designated position. In fact, the board has never, as far as I can tell, addressed the issue of whether someone is in a testing designated position. I'm not aware of any court that's addressed it, and the reason that that issue doesn't arise is because it's pretty simple. You're either designated for drug testing or you're not. Well, what about the fact that he had a pre-employment drug test requirement? And that's fine, and that's a completely different section of the drug testing policy, and it is not sufficient for purposes of the Fourth Amendment, and no court has held that the fact that you have pre-employment testing automatically subjects you to random testing. So what are the cases that you rely on to say that in the absence of specific designation, um, it's a violation of the Fourth Amendment to subject an employee to drug testing? So I think Houlton is, uh, is where I would start with that, Your Honor. In Houlton, this court, uh, quoting the Fourth Circuit said, knowledge that an employee is subject to random testing is of no small importance. The fact that the employee is subject to this search procedure will not be a surprise. It was a surprise to Mr. Hanson. Citing Raub, uh, Raub, von Raub, the Supreme Court's case, uh, the court further in Houlton said, uh, random drug tests are permitted for certain employees provided that the employees have general notice that they are subject to the testing requirement. So I think it flows directly from, from this Court's decision in Houlton, but even beyond that in, in von Raub and, and all the other cases, it's recognized that the government employees have a serious and legitimate privacy interest in not being subject to drug testing. I thought he conceded below to the deciding official that, uh, it was perfectly fine for him to be subject to, uh, random drug testing. And the only thing he was really contesting was, in his words, he's disputing the fact that he used marijuana knowingly. I'm looking at A103. Um, he certainly didn't waive his Fourth Amendment argument, if that's what you're saying. On page 100, which is his, uh, statement to the deciding official, uh, you know, before he had counsel, before he was aware of it, he says, um, I did not think I had anything to worry about. If I did, I would have refused the random test. He didn't think anything to worry about because, because his view is he didn't know what he had taken. Correct. Even the brownies. But that, but he does say, I, I know that I agree with the, the illegal use of, of drugs by employees in direct conflict with the principles of enforcement. And, and he says that I, he says that I'm, I know that I'm bound by it. He doesn't say that, he doesn't raise a Fourth Amendment problem with respect to the fact of testing for his position. I, I don't think it would be reasonable to expect him to raise a Fourth Amendment problem at that time. As far as he knew, he'd worked there for eight years. He had never before been tested. He'd never been given a documentation to sign to say, I am in a testing designated position. He was never given the opportunity to appeal, which is part of the, uh, procedures. He, he was never given any of that. So far as he knew, okay, I got a drug test. I'm supposed to be drug tested. Well, he's not a lawyer. You know, he's not required to know what his Fourth Amendment rights are. The government is, the government is, and the MSPB in this court cannot sustain a, a removal that's taken a derogation of his Fourth Amendment rights. So I don't think you can put waiver on Mr. Hanson. I don't think that's reasonable at all. The question is, was it reasonable at the time that he was subjected to this test for him to, to have known that he was subject to random drug testing? And in every other case that's ever come where this issue is discussed, it's the person's in a testing designated position, and we know that because they show us a designation. Where's the designation in this case? Well, but it doesn't, it, as an IT specialist, doesn't he have, um, access to the, the precise information that, that is listed as one of the designations? No. Automated systems? He doesn't have access to automated systems? He has some access to automated systems. The affidavit that, uh, that A.J. relied upon says he has privileged access. Privileged access, what it, and, and there's some definition of that. That doesn't mean that he has access to secured information, information that you would need a security clearance to access. It would be a crime for him to access information, to be allowed to access information that, uh, are referenced in the government's brief. They're elipsed in the A.J.'s decision. The government says, here are the two databases. These are law enforcement databases. Um, uh, the affidavit that the A.J. relies on does not identify these databases. It does not say you have privileged access to da, da, da, da, including these databases because it doesn't. It would have been. At most, if we thought there was an issue, we would remand for them to consider whether or not he was clearly within the designated category was put on notice. And, and, well, it's not in the record because it was obtained after the fact. The red brief specifically says they found the email trail that, that notified him. Well, that, I, I have a real problem with that, Your Honor. My problem with that is we struggled, we did everything we could in this case to get the government to identify what's the basis for the designation. We asked Discovery. We filed a motion to compel. They filed their brief. We said it's not in here. They filed something else. It still wasn't in there. The government has never argued that he's designated. His designation flows from what the A.J. found. The first time that ever we've turned over every rock and now we found this email. Wait a minute. You want to turn over every rock? Where's the pool? There's a pool. It is a list of every employee who is subject to drug testing. It is maintained, is required to be maintained. Where is that document? If the government was going to turn over every stone and it wanted to It would have delivered this pool. It was, here is his name in that pool. Government never did that. It didn't do it below and it didn't do it in its brief in this court. And the reason it didn't, I think the only inference that can be drawn, is the reason it didn't is because he was not designated. Remember, he didn't get the phone call and say, Mr. Hanson, show up for drug testing. That's not how this happened. He was sitting in a supervisor's office and the supervisor got the call from the drug coordinator and said, show me employee A and B and tell them that they need to show up for drug testing. And the supervisor said, they're not here today. They're out in the field. And the guy said, well, give me two more. And so he said, Jeff, go do drug testing. And Jeff did. He was never designated. It was a fluke and it was improper because he was not on that list. There are, time and time and time again, there are procedures in place at the agency to protect people to ensure that they are properly included in this list, including an opportunity to appeal. And again, as in Wiley, this court dealt with the issue of reasonable suspicion testing. And the question was, I think a prison guard or something and made an anonymous tip or whatever it was. And this court said, you have to look at the knowledge of the person at the time, at the time that the testing was made. Well, in the context of Mr. Hanson's reasonable expectation of privacy, you have to look at what it was at the time. And at the time, he didn't know about this affidavit and, you know, parsing of these documents. What he knew is he was never given any of these documents. He never signed, as he was required to do, an acknowledgment that he was subject to drug testing. He had nothing in his position description that identified his position as being subject to drug testing. That's what was known at the time. And under this court's decision in Holton, which is, you know, it can't be a Do you need a remand? No. No. The government had every opportunity, every opportunity. We asked for this in this government. We filed a motion to compel. Did they produce it? No. Only in this court. And is there an excuse that, oh, I'm sorry, we didn't produce it because it was unavailable? No. We looked through our archives emails and found it. They should have found that below, where we would have had an opportunity to address it. They didn't. So they don't deserve another chance. I didn't get a chance to talk about intent. Obviously, it's a huge. Let's save the rest of your time. Thank you. Because he only discussed the Fourth Amendment issue, I think you should just limit yourself to that. Certainly, Your Honor. Otherwise, we'll rely on the briefs for the other issues. May it please the Court. The argument was made that it was a surprise that Mr. Hansen was subject to random drug testing. He did not express surprise, however, in the first four iterations of his story before the agency and then before the board. But when you're talking about someone who's not represented by counsel, you're talking about a constitutional issue. There are. It's a lot more liberal with respect to whether or not something has been waived. To be sure, that is true with respect to his statements before the agency. But after Holden, why didn't you just say, we understand that our initial requirement is to establish that he is in a drug testing designation? And the agency did that. The administrative judge found, based on substantial evidence, that he was in a testing-designated position. Based on that one line about the automated systems? Based on several things, Your Honor. Based on the statement in the drug-free policy, which Your Honor referenced, based upon sworn evidence establishing his job duties, which squarely fall within the parameters of that provision of the drug testing policy. But if that weren't enough, there was additional sworn evidence that showed Mr. Hansen's IT specialist position specifically appears on the agency's complete list of covered positions that are subject to random drug testing that appears in the appendix on pages 128 and 152. He's his IT specialist. I see on page 152 it does list IT specialists. That's what you're referring to? Yes, Your Honor. And that was submitted as part of a sworn declaration by the drug testing administrator who administers the complete list of drug testing positions. Okay, so where on 152 is that? Oh, down here, 2210? Yes, Your Honor. The AJA didn't rely on this, right? Ultimately. The administrative judge found that it was not necessary to go that far, but it was in the supports the agency's... Does Mr. Hansen have a top-secret security clearance? No, Your Honor. Well, this position is described as one that has a top-secret security clearance. It was sensitive but not classified, Your Honor. Okay, so then he doesn't fall under this, right? No, Your Honor. The position description at the time provided for a top-secret security clearance. However, in practice, the agency hired for both. Right, so if he's not in a top-secret security clearance and he's not managing cybersecurity projects, then how does he fall in this category? If anything, that puts him on notice, but he doesn't fall in this category. Your Honor, I grant you that that's one possible reading of this document, but that was not the reading that the affiant provided to the board. The affiant is Mr. Van Spivey on page 128. The declaration of Mr. Van Spivey states in paragraph 4 that Mr. Hansen was subject to random drug testing under the agency's program and attached the... Then goes on with the attachment and provides the list of all the testing designated positions. If the attachment on this affidavit, then how are we supposed to say this affidavit proves anything? Well, Your Honor, it's sworn testimony before the board from the administrator of... If I put in an affidavit that says, the document says apple, and you go look at the document and it says orange, then how is that sworn testimony meaningful? Your Honor, that would be... What about paragraph 8 on page A129, where it seems to address what would happen if an ITS employee has a top security clearance? That's right, Your Honor. The Spivey declaration goes on to say that all employees occupying the ITS position are in a testing designated position regardless of their level of clearance. And this issue... If the question still goes back to how would they know that? Sure. So there's a notice question that has been presented to the court at this level. However, there wasn't a Fourth Amendment notice argument made before the board. When... All right, just let's assume the notice argument is on the table. Okay. So what the appellant is requesting here is that the court make fact-finding in the first instance on a matter that was not presented either in an affirmative defense or in an argument before the board. And they not only don't... Not only are they asking for fact-finding in the first instance on the Fourth Amendment issue, but they don't want a remand to get to the truth of the matter because Mr. Hansen, from the outset of his employment, received clear and unambiguous notice in the drug test fact sheet, which is referenced... That's the thing in the footnote, right, that you didn't produce until after the proceeding. That's right. And Your Honor, to be fair... Well, you were searching for that and produced it. Why did you... How can you say you didn't know that notice was an issue? Why search for that if you didn't know notice was an issue? Because of the timing, Your Honor. It was not an issue in the proceedings before the board. There was no affirmative defense based on the Fourth Amendment asserted at the board under 7701C2C. So this issue, an affirmative defense based on the Fourth Amendment, was never the subject of discovery and fact-finding by the board. It was only until the opening brief in this case asserted a lack of notice that the agency went back. And it wasn't something that was easy to find, Your Honor. But when they specifically looked for it in response to the specific argument that was made before you, they did find it. And I have it before me, there's no other way to read this, Your Honor, that Mr. Hansen was notified, you have been tentatively selected for a testing-designated position and are subject to post-employment random drug testing. So they don't want the remand to get to the truth of whether there was notice or not. They are asking for Your Honors to make factual findings in the first instance on an incomplete record. We are happy to have... Is it true that the government keeps a list of employees by name who are testing in testing-designated positions? No, Your Honor. They maintain a complete list of positions. This is a massive agency and they do it by position. That's why it's a testing-designated position, not a testing-designated employee. Okay. So the list that you gave us, which I've just pointed out doesn't specifically include someone that doesn't have a top-secret clearance, the A.J. didn't rely on that. That's correct. The administrative judge found it was, quote-unquote, clear that Mr. Hansen's job duties married up to the provisions in the drug-free workplace policy, which provided that employees with sensitive access to automated systems are subject to random drug testing. And what page of the appendix is that reference on? Are you asking for the board's finding or the underlying provisions in the... The underlying provision of the workplace... ...on appendix 32, and it also appears a second time on appendix 58. So on 32, it's under scope A, paragraph 6, and the same list appears on 58 as well in the appendix. And I would also... On page 58, where are you referring? I'm looking at page 58, so can you tell me... Sure. ...where I'm supposed to be looking at? It's certainly not paragraph 3, but what are you relying on? Also, positions designated for drug testing under 4, there are, they go into employees who have access to these automated commercial systems, TACS and ACS. The verbiage is not identical, but the substance is the same. So this is what was relied on by the board? Yes, Your Honor. And also, I would point out that also in the appendix on page 177, which is the letter, the job offer letter to Mr. Hansen, on 177, next to... Drug test. Drug test, please refer to the enclosed fact sheet for documents you should read prior to the test. That's the agency's notice. Mr. Hansen's Fourth Amendment arguments are without merit, and lest the Court have any doubt, we would be pleased for a remand for further factual development so that Mr. Hansen can assert the affirmative defense. There could be proper discovery and fact-finding. And ultimately, we respectfully submit that the remand would be futile for Mr. Hansen, but if that's what he wants, I don't think he does, but... Two questions, and you might not know this, but how does someone who's subject to random drug testing make it through eight years without being tested? It's a large agency. I don't know the frequency with which individuals are subject to random drug testing, and this is... How many years was it? Was it eight, or was it... Your Honor, approximately seven or eight years, roughly. And were the other two people that were originally supposed to be the ones that were sent to drug testing, did they do the exact same job as he did, or did they do something else? I don't think we have the answer to that in the record, Your Honor. Those names come from a drug testing coordinator, and when somebody is not present on the day that they're supposed to have a random drug test, the drug testing coordinator selects a new name. Okay. All right. Thank you. Thank you, Your Honor. If I could just have a moment to wrap up. Mr. Hansen... When Mr. Hansen tested positive for marijuana, he ultimately lost the trust of his supervisors to serve in a highly sensitive position at a law enforcement agency. Because the board properly allocated the burdens of proof and made reasonable credibility determinations in sustaining the removal penalty, the court should affirm. Thank you. So, if I may, Your Honor, let me start with the trust. Because I hear that every time, and I'm sure you do too. Just very quickly, he was tested in April and proposed in April. He was removed in September. For six months, this man who no one could trust because he was such a druggie, had every bit of access that he ever had. So, I just, I bridle every time I hear this about trust. He told his friends that he thought he was going to lose his job. He didn't have a reason to believe that his law enforcement job was dependent on being drug-free. Yeah. He understood the gravity of it. He knew what he was up against. He tested positive for drugs. And even though he wasn't in a testing designated position, you know, he had no idea. But even though he was not in a position, he knew that's a big deal. That's a, it is a big deal. We're not disputing that. You, you can see that constitutional arguments are waivable, right? Certainly, they're waivable. We didn't waive anything. We raised this before the Board. That's why the Board addressed it. But we said that the government, part of their obligation, part of their, part of their burden to prove this case is to prove that he's in a testing designated position. They didn't prove it. They didn't prove it. And they, they didn't prove it. We kept searching. Please give us information. Tell us where these designations are. Motion about where's the designation. They wouldn't come up with it. Finally, they didn't finally come up with it until their closing brief. And even then, the AHA didn't buy that. And now they're saying there's substantial evidence to support a finding the AHA didn't make. But I have to address two things. One, very quickly, the affidavit that they referred to from the supervisor. The affidavit doesn't say that Mr. Hansen had access to these databases. It would have been a very simple thing for that supervisor to say, Mr. Hansen had access. Can you tell me more specifically, which declaration are you referring to? Who is the declarant? Bartlow, I believe her name is. And, sorry, let me pull that page number for you. That's the one we were looking at before? You were looking at that one before. That's one where they said that, where she says he has privileged access. But privileged access, Your Honor, doesn't mean that he has access to classified. I'm sorry, page A123. Let's see if that was 123. I didn't go to that form, sorry. Yes, Bartlow, 123. She says he has privileged access. She could have said, and including access to these specific databases. She didn't say that. And the reason she didn't say is because he doesn't have access to it. He doesn't have a security clearance. Those are law enforcement databases that you must have security clearance. So he doesn't have any security clearance? He has no security clearance. So the affidavit doesn't say that. It could have. But I have to go back to this issue about whether they maintain a list of individuals. They certainly do. Their policy says individuals, not positions, individuals are placed into a pool of employees who occupy a testing designated position. Designated, mind you, not designatable. Designated. Individual specific notices. Individual specific notices are sent to those employees, informing them of their inclusion in the random drug testing program. Never got that notice. Notification of selection. The employee is notified that he's been selected for drug testing. I think that form is on page 82 of the appendix. This is the form that Mr. Hansen should have received if he was actually designated to be tested. He never received it because he wasn't designated. And no, there is no reason to remand this to give the government another chance. We dispute, notwithstanding the government's assertion of what that document says. That's not what it means. You're out of time. Thank you.